IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PLEDGE DAVIS,
     Plaintiff,

vs.                                Case No.: 3:18cv2117/LAC/EMT

WARDEN C. MAIORONA, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Pledge Davis ("Davis"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. ¶ 1983 (ECF No. 1). The court screened the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), and provided Davis an opportunity to correct the pleading deficiencies identified by the court (*see* ECF No. 6). Davis has now filed a First Amended Complaint (ECF No. 9).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Upon review of Davis' First Amended Complaint, the undersigned recommends that this case be dismissed for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    BACKGROUND

Davis names five Defendants in this case, all of whom were employed at Blackwater River Correctional Institution at the time of the events giving rise to this action: Warden Maiorana, former Inspector Worrell, former Administrative Captain Maddox, former Classification Supervisor Miller, and Sergeant Showers (ECF No. 9 at 1–3).[1]  Davis alleges during April of 2016, he asked his classification officer, Ms. Bonfardine, for permission to receive legal materials from his family (*id.* at 6). Davis alleges his family purchased copies of documents in his criminal case file from the State Attorney's Office (*id.*).  Davis alleges that on May 2, 2016, Ms. Bonfardine submitted the following recommendation to then-warden Middlebrooks:

> Inmate Davis is requesting to have legal transcripts sent into the Facility outside of the normal procedures for legal mail.  He is requesting to have them sent in by his family and they will exceed the allowed amount of approximately 100's [sic] of pages.  He is requesting your permission that this be authorized.  It is my recommendation that this request be approved.  It is within the rule.

(*see* ECF No. 1, Ex. A, Memorandum).    The request was approved by the Classification Supervisor, the Assistant Warden of Programs, and the Warden (*id.*).

Davis alleges the legal documents arrived at the institution on May 3, 2016 (ECF No. 9 at 7).  According to Ms. Bonfardine's affidavit, which Davis submitted as an attachment to his initial Complaint (ECF No. 1), Davis reported to Ms.

---

[1] The court refers to the page number automatically assigned by the court's electronic filing system, rather than the page numbers of the original document.

Bonfardine's office, and, in compliance with institutional procedures, the box of documents was opened in Davis' presence, and each page was inspected (*see id.*, Ex. N, Affidavit of Rita Bonfardine).   Neither contraband nor anything unusual was discovered in the documents themselves (*id.*).   Ms. Bonfardine instructed Davis to sign an acknowledgement that he received the documents, to place the documents in a bag, and to leave the box in which they were received in Bonfardine's office (*id.*). Davis alleges he returned to his cell with the documents, and moments later, Defendant Showers and another officer searched his cell and confiscated the documents (ECF No. 9 at 7).   Davis alleges he was escorted to Defendant Inspector Worrell's office, where Worrell advised him that the documents contained contraband which was considered dangerous to the institution (*id.*).   Davis alleges he was placed in administrative confinement under investigation (*id.*).   Davis alleges he was released from administrative confinement on or about May 11, 2016 (*id.* at 8). Davis alleges he was not charged with a disciplinary infraction, nor was he issued a "confiscation slip" for his legal documents (*id.*).   Davis alleges the documents included "newly discovered evidence" of his actual innocence (*id.* at 9).

Davis alleges he submitted administrative grievances seeking the return of his legal documents, but Defendants Worrell, Miller, Maddox, and Maiorana denied the grievances (ECF No. 9 at 7).   Davis attached copies of the grievances to his initial Complaint (*see* ECF No. 1, Exs. C, D, E, G, H, J).   According to the grievances,

Defendants' stated reasons for denying Davis' requests for return of his documents was that the mail sent from Davis' family "was found to have drug paraphernalia on it," "appeared to be tainted," "contained contraband that was considered dangerous to the institution," and "was questionable" (*see id.*). Defendants advised Davis that the documents were returned to the sender pursuant to the institutional mail return policy (*see id.*).

Davis claims that the confiscation of his documents violated his First Amendment right to access the courts, because it hindered his ability to present a claim of newly discovered evidence of his actual innocence to the state and federal courts (ECF No. 9 at 8–9). Davis claims that the document confiscation also deprived him of a liberty interest in violation of the Fourteenth Amendment, because it frustrated his opportunity for a re-trial in his criminal case (*id.* at 10). Davis additionally asserts an equal protection claim under the Fourteenth Amendment (*id.*). He alleges Inmate Shamond Byrd similarly obtained permission to receive legal materials in excess of fifteen pages and was permitted to keep them (*id.*). Davis seeks declaratory and injunctive relief, specifically, an order requiring Defendants to replace his legal documents (*id.* at 11).

## II. DISCUSSION

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

Initially, Davis' allegations fail to state a plausible equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause, a prisoner generally must allege "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The plaintiff

must also allege that the defendant acted with the intent to discriminate against him.
*See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987);
E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987).    Conclusory
allegations or assertions of personal belief of disparate treatment or discriminatory
intent are insufficient.    *See* GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d
1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th
Cir. 1987).

The Equal Protection Clause is also implicated in "class of one" claims.
Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).  A "class of
one" equal protection claim does not allege discrimination against a protected class,
but rather it alleges that the plaintiff "'has been intentionally treated differently from
others similarly situated and that there is no rational basis for the difference in
treatment.'"  Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting
Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d
1060 (2000)).  The same strict "similarly situated" standard applies whether an equal
protection claim is brought under a "class of one" theory or a traditional theory of
unlawful discrimination.    *Id.* at 1204–05.    Indeed, the "similarly situated"
requirement must be rigorously applied in the context of "class of one" claims.  *See*
Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir.
2009).

Here, Davis submitted an affidavit from Inmate Shamond Byrd in support of his allegation that he and Byrd were similarly situated (*see* ECF No. 1, Ex. M, Affidavit of Shamond Byrd). Davis alleges Byrd similarly obtained permission to receive legal materials in excess of fifteen pages and was permitted to keep them (*see* ECF No. 9 at 10). In the affidavit submitted by Davis, however, Inmate Byrd states nothing about his (Byrd's) legal materials; instead, Byrd simply relates his observations of the cell search during which Davis' legal materials were confiscated (*see* Byrd Aff.). Davis' allegations fail to show he was similarly situated with any other prisoner who received more favorable treatment than he; therefore, they do not state a plausible equal protection claim under either the traditional equal protection analysis or the "class of one" analysis.

Additionally, Davis' allegations, as well as facts of which the undersigned takes judicial notice, fail to state a plausible First Amendment claim. It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983. *See* Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). However, to successfully allege a constitutional violation based upon a denial of access to courts, Plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. Lewis, 518 U.S.

at 349.  The type of prejudice that an inmate must show is that which hindered his ability to bring a claim to court; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* at 354.  Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.*  A plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'" *Id.* at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Furthermore, the plaintiff must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendants' actions. Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing Lewis); *see also* Bass v. Singletary, 143 F.3d 1442, 1445–46 (11th Cir. 1998).  Moreover, a plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable merit.  Lewis, 581 U.S. at 353 n.3; Wilson, 163 F.3d at 1291.

Here, Davis alleges if Defendants had not confiscated his legal documents, he would have been able to present a claim of actual innocence based upon newly discovered evidence in his state criminal case, Dade County Circuit Court Case No. F-00-15624A (*see* ECF No. 9 at 7, 9).  Davis alleges the legal materials would have enabled him to show the following:

> that the State withheld evidence showing the victim was on probation,
> violated the probation, then made a deal with the State to testify against

> Plaintiff in exchange for a reduced sentence!  A showing of illegal
> sentence, actual innocence, and recantation of victim's accusation.

(ECF No. 9 at 9).

The court takes judicial notice of information available on the database maintained by the clerk of court of Miami-Dade County, Florida, Case No. F-00-015624-A, which reveals that on October 5, 2007 (several years prior to the confiscation of Davis' legal documents in 2016) the court issued an order denying Davis' motion for post-conviction relief.  A copy of the state court's order is attached.[2]  The following facts are included in the state court's order:  (1) Davis was convicted of second-degree murder and attempted first degree murder; (2) the victim of the attempted first degree murder charge, Jim Henry, did not testify at Davis' trial (obviously the victim of the second-degree murder charge is deceased), and (3) the State's case was comprised of testimony of two witnesses, Tavon Lane and Michael Lenard.

Because Victim Henry did not testify at Davis' trial, and there is no indication that any of his out-of-court statements were admitted at trial, Henry's credibility

---

[2] *See* Fed. R. Evid. 201; <u>United States v. Berrojo</u>, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); <u>In re Salem</u>, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); <u>Dawson v. Mahoney</u>, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); <u>United States v. Mercado</u>, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

played no part in the jury's verdict of guilt. It follows that any "newly discovered evidence" of Mr. Henry's motivation to testify against Davis (e.g., evidence that Henry had a deal with the State to testify against Davis in exchange for a reduced sentence) would not have supported an arguably meritorious post-conviction claim.

Additionally, Davis cannot show he was prevented from presenting a claim of actual innocence based upon a recantation by Mr. Henry or either of the two witnesses who testified for the State at trial, Mr. Lane and Mr. Lenard. The state court's order denying Davis' post-conviction motion demonstrates that all three of these men testified at a post-conviction evidentiary hearing (*see* attached Order Denying Defendant's Motion for Post Conviction Relief). At the post-conviction hearing, Mr. Henry denied that Davis, or anyone else, shot at him, and denied that he (Henry) was at the scene of the shooting (*see id.*). Mr. Henry testified that any statement he made to police implicating Davis as the shooter was coerced (*see id.*). At the post-conviction hearing, Mr. Lane and Mr. Lenard testified that they were coerced by police to testify at trial that Davis was the shooter, and they recanted their trial testimony (*see id.*). The state court found the recantation testimony of all three men incredible (*see id.*). Davis appealed the circuit court's order to the Florida Third District Court of Appeal, Case No. 3D07-3052. The appellate court affirmed the decision without written opinion on December 30, 2009. Davis v. State, 25 So. 3d 1242 (Fla. 3d DCA 2009) (Table).

Davis cannot show that the confiscation of his legal documents on May 3, 2016, actually harmed or prejudiced him with respect to any post-conviction matter which had arguable merit. Therefore, he cannot state a plausible First Amendment claim.

Further, Davis' Fourteenth Amendment due process claim, based upon the confiscation of his legal documents, is not plausible. If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Here, Davis' claim is covered by the First Amendment; therefore, substantive due process analysis is inappropriate. *Id.*

For these reasons, it is respectfully **RECOMMENDED**:

1.    That this action be **DISMISSED** with prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii); and

2.    That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this <u>15th </u>day of March 2019.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

       Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.